Special Term—June 1854.

GHOLSON, J. presiding.

### ADOLPH LOUIS *vs.* STEAMBOAT BUCKEYE.

Where common carrier fails to deliver goods at the time contracted for, or wholly fails to deliver them at all, the measure of damages is the market value of the articles at the place of delivery, at the time they should have been delivered.

If goods were intended to be reshipped for some other point than that, at which the carrier contracted to deliver them, loss of profits on a sale which might have been made, at the ultimate point of destination, is neither a natural, nor proximate consequence, of the breach of contract.

A temporary inflation of the price of an article in common use and constant demand, would not be a fair measure of damages in such a case.

No costs would be allowed in an action which should have been brought before a Justice of the Peace.

This was an action submitted to be tried by the Court, and the facts were found to be as follows:

"The defendant contracted to deliver 20 barrels of whisky for the plaintiff, at a place called Napoleon, in Arkansas. The vessel, instead of making the delivery when she reached Napoleon, carried the goods on to New Orleans, and did not deliver them until her return, some two weeks after the proper time of delivery, when they were delivered and received by the consignee or agent of the plaintiff. A question arose as to the proper measure of damages, and as to what damages the plaintiff could legally

show to have proceeded from the neglect, and to be properly chargeable on the defendant.

" The plaintiff claimed, that he had the right to show that Napoleon was not the ultimate point of destination, but that the whisky was intended for Little Rock. That if the whisky had been delivered at the proper time, it would have been transhipped to Little Rock, reaching there at the earliest period of the resumption of navigation on the Arkansas River, at which time the proof showed that on account of the scarcity of the article in the market, a very high price might have been obtained. This high price only continued for a short time. On the coming in of a sufficient supply, the price fell. If the whisky had gone forward at, or within a day or two of the time the vessel reached Napoleon, and had been forwarded to Little Rock, as other goods belonging to the plaintiff, and part of the same shipment, the plaintiff might have sold at $1.00 per gallon. After the fall in the market, he was compelled to sell at a price very much reduced. This difference was one item of damage, which the plaintiff claimed to recover."

GHOLSON, J.

The general principle requires, that the proximate and natural consequences of the breach of contract in such a case as the present, should form the subject of the damages to be recovered. 13 *Barb.* 371 *and cases cited :* 2 *Greenl. Ev.* 256. Difficulty has occurred in applying this rule to particular cases; but in the present case, the loss of an unusually high price for the article, at its ultimate point of destination, does not seem to me to be either a proximate or natural consequence of the breach of contract.

Had there been an entire failure to deliver the whisky, the measure of damages seems to be fixed by the decisions, at the value of the article at the time and place of delivery, and interest for the delay.   M. Gregor *vs.* Kilgore, 6 *Ohio* 358 : 5 *Conn.* 222 ; 5 *W. & S.* 106.

There having been a delivery at the place agreed on, though not at the time, it is difficult to see, how greater damages can be recovered, than would have been allowed, had there been no delivery at all.   And if there had been no delivery, the market price of the article at Napoleon would fix the damages.   6 *Ohio* 358.

But, if we could have reference to Little Rock, I do not think a temporary high price, owing to accidental circumstances, would furnish a proper guide.   3 *Hill* 333, 338. Such a price can scarcely, with any propriety, be considered a market price.   Where an article of a particular description, and of constant demand, is in the hands of one or two individuals, and owing to temporary causes the quantity cannot be increased, it would be scarcely proper to admit, that what they might choose to ask, or be able to exact, would form "a proper basis upon which to determine the value, when the fact becomes material in the administration of justice."   3 *Hill* 338.   In this case, the witness says, that of the particular description of whisky, there was none in the market.   He could have got the high price, if he had had the article.   It then becomes the mere loss of a bargain—of a chance for a speculation. If the plaintiff in this case had in view a temporarily inflated price for liquors at Little Rock, and the importance of his consignment reaching there among the earliest arrivals, on the rise of the river, he should have made his contract specially with reference thereto.   He should at

least have communicated these particular circumstances to the carrier. The plaintiff not having done so, I feel that I would be doing injustice, to visit on the carrier, the loss to the plaintiff of the high price in the Little Rock market.

Having disposed of this part of the plaintiff's claim, I next come to a consideration of the actual legal damages sustained by him, on account of the breach of the contract. After considering each item of damage, and giving what I consider a fair estimate to each, I make the amount $30, for which he will be entitled to a judgment; but as the amount is under the jurisdiction of a Justice of the Peace, I can give him no costs.