DAVIS & MAJOR *v.* CINCINNATI, HAMILTON & DAYTON R. R. CO.

1. Where the defendant failed to deliver, in a reasonable time, a boiler constructed for a steam saw-mill, the measure of damages would be as follows: the actual expenses incurred, as well as the reasonable time and trouble in traveling to ascertain what had become of the boiler, and the expense incurred in preparations for connecting the boiler with the fixtures and machinery of the saw-mill, and interest on the value of the property during the time of detention.
2. That the profits which might have been realized, had the boiler reached its destination at the proper time, were not proper and reasonable charges, and should not be allowed.

SPECIAL TERM.—An action to recover damages, caused by delay in the transportation and delivery of an iron boiler, shipped at Cincinnati, for carriage to Knightstown, Indiana.

The facts sufficiently appear in the decision.

*Jones & Ware,* for plaintiffs.

*Worthington & Matthews,* for defendant.

GHOLSON, J. This was an action to recover damages for the failure, on the part of the defendant, to deliver, within

a reasonable time, a boiler constructed to be used in a steam saw-mill. It was admitted that there had been a breach of the contract for the delivery; the contest was, as to the proper measure and amount of the damages.

The items of special damage claimed by the plaintiff may be divided into three classes: 1. The trouble and expense incurred in traveling, to ascertain what had become of the boiler, which was detained about a month beyond the period when it should have been delivered in the usual course of transit. 2. The expenses incurred in the preparations for connecting the boiler with the fixtures and machinery of the saw-mill, it appearing obvious, from the character of the construction of the boiler, and the point of its destination, that it was intended for use, and not for sale in the market. And, 3. The profits which might have been realized, had the boiler reached its destination at the proper time. Under this head may be included the wages and expenses of an engineer, employed in advance of the completion of the mill, to attend to the running of it when completed.

The general rule as to the proper measure of damages in such cases as the present, I had occasion to refer to in another case, 1 Handy, 150, *Louis* v. *Steamboat Buckeye.* The proximate and natural consequences of the breach of contract should be considered. The difficulty is in applying the general rule to particular cases. And it seems to me that the proper test is to inquire, what consequences may, from the nature and subject matter of the contract, be reasonably deemed to have been in the contemplation of the parties, at the time it was entered into? Any damage which might not be reasonably expected to ensue from a breach of the contract, should not be allowed. To authorize a recovery for such damage, there should be proof, that, by the terms of the agreement, or at least by notice, it was within the actual expectation of both parties. Any other rule might be attended with considerable hardship, and, in the language of a recent case in New York, 16 Barb.

389, *Horner* v. *Wood,* "few would enter into contracts of any considerable extent, as to the subject matter, or time, if they should thereby incidentally assume the responsibility of carrying out other arrangements, over which they had no control, and the existence of which was unknown to them." See also 11 Barb. 371; 7 Hill, 61; 1 Exch. Rep. 410. As said by Parke, B., in the case last cited, "the defendants are responsible only for the reasonable consequences of their breach of contract."

In view of the above principles, I am satisfied that the items of damage embraced in the first two classes, should be allowed, and those in the last disallowed. The plaintiff will also be entitled to an allowance for the detention of his property at least equal to the interest on its value.

As to the first items in the first class, trouble and expense in seeking for lost property, seems to be a very natural consequence of the loss. For what trouble and expense an allowance should be made, and the amount to be allowed, are questions of fact, to be considered under the circumstances of the case. The failure to receive a small package of but little value, would not justify a claim for the trouble and expense of a trip to make inquiries as to its miscarriage. In such a case as the present, I think it entirely reasonable that inquiries should be made in that mode, and an allowance will, therefore, be made, for those items of damage. Not only should the actual expenses be allowed, but such amount as may be deemed reasonable, for the time and trouble.

As to the items in the second class, the article to be carried was evidently intended for use, and not for sale, and its use required certain preparations. These might or might not have been made in advance. If they were, in fact, so made, and a loss was incurred for the want of the article, which was the subject of the contract of carriage, it is one, I think, of that character which might have been reasonably expected, and is sufficiently proximate. It is reasonable to suppose, that a party who has had constructed

a boiler adapted to a saw-mill, and who contracts for its carriage to a place in the interior of the country, means to put it into immediate use; and, it is equally reasonable to suppose, that he has made the usual and necessary preparations for such a purpose.

As to the items in the third class, I do not think it could have been reasonably expected that an engineer would have been employed, and his wages have commenced in anticipation of the completion of the mill. The profits which might have been made, if the mill had been completed at the time it would have been, had the boiler been received, are of a character too contingent to authorize a recovery for damages.