## M. and D. WALRATH *vs.* REDFIELD.

In an action on the case for damages to the plaintiffs' saw mill and other property, occasioned by the act of the defendant in constructing a dam and dike below such mill, and thereby causing the water to flow back upon the mill, and rendering it incapable of being used, the plaintiffs are only entitled to recover the value of the use of their mill during the time they were necessarily deprived of the use of it, and the amount which it was permanently diminished in value by the erection of the dam. They can not recover the amount of a loss upon saw logs on hand at the time of the injury, sustained either in consequence of a deterioration in their value, or by a depression in the market price.

In such an action, the *onus* of showing that the entire damages claimed resulted necessarily from the act of the defendant is upon the plaintiffs.

The damages in respect to the saw logs must be averred in the declaration, and proved upon the trial, and they are too speculative, uncertain, remote and contingent, to be allowed, even upon proof that the plaintiffs could not, by the use of ordinary diligence, have procured the logs to be sawed, elsewhere, and could not have disposed of them before sawing.

In actions of tort, where there has been no willful injury, the plaintiff can only recover the damages necessarily resulting from the act complained of, and he can not conduct in such a manner as to make the damages unnecessarily burdensome.

THIS was an action on the case for damages to the plaintiffs' mill and other property, situated on the Chittenango creek, in the county of Madison, and was tried at a circuit court held in that county in December, 1849, before Mason, justice. The plaintiffs were the owners of a saw mill on the west side of the Chittenango canal, which was used as a feeder to the Erie canal at Chittenango. The mill was supplied with water from the Chittenango creek. In 1840, the defendant who was a superintendent of the canal, constructed a dam and dike to turn the waters of the Chittenango creek into the Chittenango canal and feeder, a short distance below the plaintiffs' mill, with a view to supply water for the Erie canal ; and in so doing caused the water to flow back upon the plaintiffs' mill, and rendered it incapable of being used. The dam was subsequently carried off by a freshet, and in the mean time the plaintiffs had raised their mill a few feet, at an expense of $450 to $600. The plaintiffs, at the time of the erection of the dam by the defend-

ant, had on hand some 2000 to 2500 logs, which were kept by the plaintiffs until the dam was carried off in the spring of 1842, and were badly worm-eaten, and damaged from one third to one half their value. The plaintiffs also lost the earnings of their mill so long as it remained idle in consequence of the erection of the dam. The jury, under the charge of the court, found a verdict for the plaintiffs for $3700 and the defendant now moved for a new trial, upon a case.

*T. Jenkins*, for the plaintiffs.

*W. Hunt*, for the defendant.

*By the Court*, ALLEN, J. The jury have found that the defendant was a wrongdoer in the erection of the dam which caused the injury to the plaintiffs' mill, and that the title to the premises occupied by the plaintiffs' mill and machinery had not vested in the state; that the presumption of title in the state which resulted from the map and accompanying documents which were given in evidence, and which by law are made presumptive evidence of such title, (1 *R. S.* 218, §§ 4 *to* 7. *Laws of* 1837, *p.* 518,) were overcome by the other evidence in the case. Several questions of some difficulty are presented, upon the rulings and decisions of the justice upon this part of the case. But as we are of the opinion that the measure of damages adopted by the jury under the direction of the court was erroneous, and that a new trial must be granted for that reason, and as the evidence may be materially different upon another trial, or another jury may arrive at very different conclusions upon the same evidence, we do not propose to examine the questions made upon the right of the plaintiffs to recover.

The defendant requested the judge to instruct the jury in respect to the damages, 1st. That the plaintiffs had no right to allow the dam to stand for 21 months and charge the defendant for the damage during that period; that they were only entitled to the expense of abating it and the loss occasioned by its standing still while necessary to abate it; or, 2d. That the

plaintiffs were only entitled to damages for raising the mill, the loss by its standing still for the ten days necessary to raise it, and its diminished value as raised; and 3d. That the loss by worms eating the logs was *too remote*, and not a necessary consequence of the act done; that the logs might have been sold, or otherwise disposed of. The court refused to charge as requested in either proposition; and in answer to the third proposition charged the jury that in this action the plaintiffs, if entitled to recover at all, were entitled to recover the actual damages which legitimately flowed from the wrongful act of the defendant. That whether the damage to the logs resulted in consequence of the wrongful acts of the defendant in depriving the plaintiffs of the lawful use of their mill and water privilege, was a question which the court should leave to the jury; and that if the jury found that issue in favor of the plaintiffs, then they should take that item of damage into account in making up their verdict; otherwise not. With the exception of the fact that after the construction of the dam by the defendant, the logs could not have been sawed at the mill of the plaintiffs, which had been rendered useless for the time being, there was no evidence that the injury to the logs was the consequence of the act of the defendant. So that the charge and instruction to the jury, in substance and effect, was that if the mill of the plaintiffs was stopped by the wrongful act of the defendant, by means whereof the plaintiffs were unable to saw the logs at that mill, and the logs during the suspension of the sawing at the mill, became worm-eaten and injured, the defendant was responsible in this action for the injury. There was no evidence that the logs could not have been sawed at once, in the immediate neighborhood, or disposed of for their full value, or that the logs were necessarily suffered by the plaintiffs to remain and incur the injury complained of. Neither is there any reason to suppose that the injury to the plaintiffs was committed willfully or wantonly by the defendant. In cases in which there is neither fraud, malice or oppression, the law will not generally, in making compensation to the injured party, take into consideration remote or consequential damages. The mea-

sure of damages is the direct pecuniary loss sustained by the party. Mr. Greenleaf, in his Treatise on Evidence, says, " The damage to be recovered must always be the natural and proximate consequence of the act complained of." (2 *Greenl. Ev.* § 256.) This proposition appears to be well settled by adjudications. (*Armstrong* v. *Percy*, 5 *Wend. R.* 535. *Cram* v. *Peters*, 6 *Hill*, 522. *Vicars* v. *Wilcocks*, 8 *East*, 1. *Downer* v. *Madison County Bank*, 6 *Hill*, 648. *Loker* v. *Damon*, 17 *Pick.* 284. *Smith* v. *Condy*, 1 *How. R.* 28.) The difficulty is in applying the rule to cases as they arise in practice; there being no well defined and easily recognized boundary line between damages which are natural, necessary, direct and proximate, and those which are remote and contingent. Many of the cases to be found in the books are border cases, and courts have not always been uniform in the decision of cases apparently within the same principle. The plaintiffs were probably entitled to recover the value of the use of their mill during the time they were necessarily deprived of the use of it, and the amount which it was permanently diminished in value in consequence of the erection of the dam. (*White* v. *Moseley*, 8 *Pick.* 356.) These were damages which necessarily and naturally resulted from the act of the defendant. I do not think that the plaintiffs were called upon at their peril to abate the dam which had been erected by a state officer, under a claim of right, and for state purposes. But to go farther and allow the parties what they have lost upon their logs, either in consequence of a deterioration in their value, or a depression in the market price, would be very analogous to the allowance of unearned and contingent profits, which in no case is allowable. (*Blanchard* v. *Ely*, 21 *Wend.* 342. *Giles* v. *O'Toole*, 4 *Barb.* 261.) The cases referred to, it is true, are cases upon contract, but the rule is the same in actions of tort, in the absence of fraud, gross negligence and wantonness. (21 *Wend.* 350. 3 *Wheat.* 546. 1 *Howard*, 28.) It would hardly be contended that the plaintiffs could have recovered the anticipated and probable profits upon any contract which they might have had for sawing for a third person, and which contract they had become incapacitated

to perform by the act of the defendant. (*Masterton* v. *The City of Brooklyn*, 7 *Hill*, 61.) And yet I see but little distinction between such a demand and the one allowed in this case. The jury have in fact, under the direction of the court, allowed the plaintiffs, 1, the value of the use of their mill ; and 2, not precisely the profits which they might have made by sawing their own lumber, and under that name, but what they would have saved by being permitted to saw it, which is nearly equivalent. It was a species of damage which will not be implied, but must be averred in the declaration and proved upon the trial. It was not a loss which the defendant had a right to expect would result from the stoppage of the mill. In marine trespasses the probable or possible profits of a voyage which has been broken up by a collision, are not allowed in the assessment of damages ; the courts adopting the rule and measure of damages applicable to the contract of insurance. (*The Amiable Nancy*, 3 *Wheat.* 546. *La Amistad de Rues*, 5 *Id.* 385. *Smith* v. *Condy*, 1 *How.* 28.) In an action against an officer for attaching a vessel bound on a voyage, the court instructed the jury to estimate the damages according to the value of the vessel at the time of taking, " and the additional damage sustained, if any." And it was held that this did not authorize the jury to assess damages for the breaking up of the voyage. (*Boyd* v. *Brown*, 17 *Pick.* 453.) Upon a complaint filed by a land owner pursuant to a statute of Massachusetts, to recover compensation for injury done to his land by its being overflowed or otherwise injured by a mill dam, he can not recover damages arising from offensive smells proceeding from the flowed land when the water is drawn off, whereby his contiguous land is rendered less valuable for building purposes. In *Eames* v. *The New England Worsted Company*, (11 *Met.* 570,) Shaw, C. J. says the object of the statute was to compensate the owner of land flowed for all the damages *directly* resulting from that cause ; and that the damage sought to be recovered in that case was too remote and contingent and not within the mill act. The assessment of damages in this case for the depreciation in the value of the saw logs of the plaintiffs would involve the

Walrath *v.* Redfield.

consideration of many facts, probabilities and uncertainties as to the degree of care which had been or might have been exercised by the plaintiffs in the preservation of the property ; the probable ability of the plaintiffs to saw the logs and perform their other engagements, had they been unmolested in the enjoyment of their mill ; and whether the lumber might or might not have been liable, when sawed, to a similar depreciation in value. The damages for this cause, I think, are entirely too speculative, uncertain, remote and contingent, to be allowed even upon proof that the plaintiffs could not, by the use of ordinary diligence, have procured the logs to be sawed, and could not have disposed of them before sawing.

But upon the case before us, a new trial should be granted, for the want of evidence that the damages claimed did necessarily result from the act of the defendant ; that it did not result from the negligence of the plaintiffs properly to care for and dispose of their property in time to prevent loss from a depreciation in value. In actions upon contract it is well settled that the party complaining of a breach of the contract can only recover the damages necessarily resulting from such breach, and he can not conduct in such a manner as to make the damages unnecessarily burdensome. ( *Wilson* v. *Martin*, 1 *Den.* 602.) The same rule should apply to actions of tort, where there has been no willful injury to the rights of another. The plaintiffs in this action, if they had an opportunity, should have procured their logs to be sawed at other mills, and thus prevented the injury of which they complain ; and if they had no opportunity to do so, they should have given some evidence of it upon the trial. In *Henry* v. *Henry*, (2 *Den.* 625,) a different rule was adopted, for the reason that the injury in that case was willful ; the court holding that in such a case the injured party was not bound to take any measures to mitigate the injury. If the plaintiffs by using reasonable precautions and such as would ordinarily be employed by a prudent man in the preservation of his property, could have prevented the loss by the injury to the logs, they can not recover for such loss in this action. (*Sedgwick on Damages*, 98. *Loker* v. *Damon*, 17

*Pick.* 284.)　As well might they upon a total destruction of their mill, claim to recover the value of all logs on hand, and the profits which they might probably have made upon any contract in force for sawing lumber, and which they were disabled from performing.　The *onus* of showing that the entire damages claimed resulted necessarily from the act of the defendant, was upon the plaintiffs, and they failed in establishing that fact in relation to this part of the damages claimed and assessed by the jury.

A new trial is granted; costs to abide the event.

[JEFFERSON GENERAL TERM, July 7, 1851.　*Pratt, Gridley, Allen* and *Hubbard,* Justices.]