Selden, J.
 

 The only point made "by the appellants is-that in estimating their damages on account of the plaintiff’s failure to furnish the engine by the time specified in the contract, they should have been allowed what the proof showed they .might have earned by the use of such engine, together with their other machinery, during the time lost by the delay. This claim was objected to, and
 
 *483
 
 rejected upon the trial as coming within the rule which precludes the allowance of profits, by way of damages, for the breach of an executory contract.
 

 To determine whether this rule was correctly applied by the referee, it is necessary to recur to the reason upon which it is founded. It is not a primary rule, but is a mere deduction from that more general and fundamental rule which requires that the damages claimed should in all cases be shown, by clear and satisfactory evidence, to have been actually sustained. It is a well established rule of the common law that the damages to be recovered for a breach of contract must be shown with certainty, and not left to speculation or conjecture ; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should
 
 per se
 
 prevent their allowance. Profits which would certainly have been realized but for the defendant’s default are
 
 recoverable;
 
 those which are speculative or contingent are not.
 

 Hence, in an action for the breach of a contract to transport goods, the difference between the price, at the point where the goods are and that to which they were to be transported, is taken as the measure of damages; and in an action against a vendor for not delivering the chattels sold, the vendee is allowed the market price upon the day fixed for the delivery. Although this, in both cases, amounts to an allowance of profits, yet, as those profits do not depend upon any contingency, their recovery is permitted. It is regarded as certain that the goods would have been worth the established market price, at the place and on the day when and where they should have been delivered.
 

 On the other hand, in cases of illegal capture, or of the insurance of goods lost at sea, there can be no recovery for the- probable loss of profits at the port of destination. The principal reason for the difference between these cases and that of the failure to transport goods upon land is, that in
 
 *484
 
 the latter case the time when the goods should have been delivered, and consequently that when the market price is to be taken, can be ascertained with reasonable certainty; while in the former the fluctuation of the markets and the contingencies affecting the length of the voyage render every calculation of profits speculative and unsafe,
 

 There is also an additional reason, viz., the difficulty of obtaining reliable evidence as to the state of the markets in foreign ports; that these are the true reasons is shown by the language of Mr. Justice Stout, in the case of the
 
 Schooner Lively
 
 (1
 
 Gallis.,
 
 315), which was a case of illegal capture. He says: “ Independent, however, of all authority, I am satisfied upon principle that an allowance of damages, upon the basis of a calculation of profits, is inadmissible. The rule would be in the highest degree unfavorable to the interests of the community. The subject would be involved in utter uncertainty. The" calculation would proceed upon contingencies, and would require a knowledge of foreign markets to an exactness in point of time and value which would sometimes present embarrassing obstacles. Much would depend upon the length of the voyage, and the season of the arrival; much upon the vigilance and activity of the master, and much upon the momentary demand. After all, it would be a calculation upon conjectures and not upon facts.”
 

 Similar language is used in the cases of the
 
 Amiable
 
 "
 
 Nancy
 
 (3
 
 Wheat.,
 
 546) and
 
 A’Amistad de Rues
 
 (5
 
 Wheat.,
 
 : 385). Indeed, it is clear that whenever profits are rejected as an item of damages, it is because they are subject to too many contingences, and are too dependent upon the fluctuations of markets and the chances of business, to constitute a safe criterion for an estimate of damages. This is to be : inferred from the cases in our own courts. The decision in the case of
 
 Blanchard
 
 v.
 
 Ely
 
 (21
 
 Wend.,
 
 342) must have proceeded upon this ground, and can, as I apprehend, be supported upon no other. It is true that Judge Cowen, in
 
 *485
 
 giving his opinion, quotes from Pothier the following rule of the civil law, viz.: “ In general, the parties are deemed to have contemplated only the damages and injury which the creditor might suffer from the non-performance of the obligations in respect to the
 
 particular thing
 
 which is the object of it, and not such as may have been accidentally occasioned thereby in respect to» his own (other) affairs.” But this rule had no application to the case then before the court. It applies only to cases where, by reason of special circumstances having no necessary connection with the contract broken, damages are sustained which would not ordinarily or naturally flow from such breach : as where a party is prevented by the breach of one contract from availing himself of some other collateral and independent contract entered into with other parties, or from performing some act in relation to his own business not necessarily connected with the agreement. An instance of the latter kind is where a Canon of the church, by reason Of the non delivery of a horse pursuant to agreement, was prevented from arriving at his residence in time to collect his tithes.
 

 In 'such cases the damages sustained are disallowed, not because they are uncertain, nor because they are merely consequential or remote, but because they cannot be fairly considered as having been within the contemplation of the parties at the time of entering into the contract. Hence the objection is removed, if it is shown that the contract was entered into for the express purpose of enabling the party to fulfill his collateral agreement, or perform the act supposed.
 
 (Sedg. on Dam., ch.
 
 3.)
 

 In
 
 Blanchard
 
 v.
 
 Ely
 
 the damages claimed consisted in the loss of the use of the very article which the plaintiff had agreed to construct; and were, therefore,- in the plainest sense, the direct and proximate result of the breach alleged. Moreover, that use was contemplated by the parties in entering into the contract, and constituted the object for which the steamboat was built. It is clear, therefore, that
 
 *486
 
 the rule of Pothiek had nothing to do with the case. Those damages must then have been disallowed, because they consisted of profits depending, not, as in the case of a contract to transport goods, upon a mere question of market value, but upon the fluctuations of travel and of trade, and many other contingencies. The citation, by Judge Cowen, of the maritime cases to which I have referred, tends to confirm this view. This case, therefore, is a direct authority in support of the doctrine that whenever the profits claimed depend upon contingencies of the character referred to, they are not recoverable.
 

 The case of
 
 Masterton
 
 v.
 
 The Mayor, &c., of Brooklyn
 
 (7
 
 Hill,
 
 61) decides nothing in opposition to this doctrine., It simply goes to support the other branch of the rule, viz., that profits are allowed where they do not depend upon the chances of trade, but upon the market value of goods, the price of labor, the cost of transportation, and other questions of the like nature, which can be rendered reasonably certain by evidence.
 

 From these authorities and principles it is clear that the defendants were not entitled to measure their damages by estimating what they might have earned by the use of the engine and their other machinery had the contract been complied with Nearly every element entering into such a computation would have been of that uncertain character which has uniformly prevented a recovery for speculative profits.
 

 But it by no means follows that no allowance could be made to the defendants for the loss of the use of their machinery. It is an error to suppose that “the law does not
 
 aim
 
 at complete compensation for the injury sustained,” but “seeks rather
 
 to divide than satisfy
 
 the loss.”
 
 (Sedg. on Dam., ch.
 
 3.) The broad, general rule in such cases is, that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions. The damages
 
 *487
 
 must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed.
 

 The familiar rules on the subject are all subordinate to these. For instance: That the damages must flow directly and naturally from the breach of contract, is a mere mode of expressing the first; and that they must be not the remote but proximate consequence of such breach, and must not be speculative or contingent, are different modifications of the last.
 

 These two conditions are entirely separate and independent, and to blend them tends to confusion; thus the damages claimed may be the ordinary and natural, and even necessary result of the breach, and yet, if in their nature uncertain, they must be rejected; as in the case of
 
 Blanchard
 
 v.
 
 Ely,
 
 where the loss of the1 trips was the direct and necessary consequence of the plaintiff’s failure to perform. So they may be definite and certain, and clearly consequent upon the breach of contract, and yet if such as would not naturally flow from such breach, but, for some special circumstances, collateral to the contract itself or foreign to its apparent object, they cannot be recovered; as in the case of the lossxby the clergyman of his tithes by reason of the failure to deliver the horse.
 

 Cases not unfrequently occur in which both these conditions are fulfilled: where it is certain that some loss has been sustained or damage incurred, and that such loss or damage is the direct immediate and natural consequence of the breach of contract, but where the amount of the damages may be estimated in a variety of ways. In all such cases the law, in strict conformity to the principles already advanced, uniformly adopts that mode of estimating the damages which is most definite and certain. The case of
 
 *488
 

 Freeman
 
 v.
 
 Clute
 
 (3
 
 Barb. S. C. R,.,
 
 424) is a case of this class, and affords an apt illustration of the rule. That case was identical in many of its features with the present. The contract there was to construct a steam engine to be used in the process of manufacturing oil, and damages were claimed for delay in furnishing it. It was insisted in that case, as in this, that the damages were to be estimated by ascertaining the amount of business which could have been done by the use of the engine, and the profits that would have thence accrued. This claim was rejected by Mr. Justice Harris, before whom the cause was tried, upon the precise ground taken here. But he nevertheless held that compensatio . was to be allowed for the “ loss of the use of the plaintiff’s mill and other machinery.” He did not, it is true, specify in terms the mode in which the value of such use was to bo estimated; but as he had previously rejected the probable profits of the business as the measure of such value, no other appropriate data would seem to have remained but the fair rent or hire of the mill and' machinery; and such I have no doubt was the meaning of the judge. Thus understood, the decision in that case, and the reasoning upon which it was based, were I think entirely accurate.
 

 Had the defendants in the case of
 
 Blanchard
 
 v.
 
 Ely (supra)
 
 taken the ground that they were entitled to recoup, not the uncertain and contingent profits of the trips lost, but such sum as they could have realized by chartering the boat for those trips, I think their claim must have been sustained. The loss of the trips, which had certainly occurred, was not only the direct but the immediate and necessary result of the breach of the plaintiffs’ contract.
 

 The rent of a mill or other similar property, the price which should be paid for the charter of a steamboat, or the use of machinery, &c., &c., are not only susceptible of more exact and definite proof, but in a majority of cases would, I think, be found to be a more accurate measure of the damages actually sustained in the class of cases referred
 
 *489
 
 ¿v, considering the contingencies and hazards attending the prosecution of most kinds of business, than any estimate of anticipated profits ; just as the ordinary rate of interest is upon th-3 whole a more accurate measure of the damages sustained in consequence of the non-payment of a debt than any speculative profit which the creditor might expect to realize from the use of the money. It is no answer to this to say that, in estimating what would be the fair rent of a mill, we must take into consideration all the risks of the business in which it is to be used. Rents are graduated according to the value of the property and to an average of profits arrived at by very extended observation; and so accurate are the results of experience in this respect that rents are rendered nearly if not quite as certain as the market value of commodities at a particular time and place.
 

 The proper rule for estimating this portion of the damages in the present case was, to ascertain what would have been a fair price to pay for the use of the engine and machinery, • in view of all the hazards and chances of the business; and this is the rule which I understand the referee to have adopted. There is no error in the other allowances made by the referee. The judgment should therefore be affirmed.
 

 All the judges concurring,
 

 Judgment affirmed.