## JOHN H. ALBERT v. THE BLEECKER STREET, &c., R. R. COMPANY.

The plaintiff, an expressman, left his horse standing, untied, in the street, near the curb-stone while he went to deliver a parcel. The driver of defendant's street car, in attempting to pass the wagon to which the horse was attached, came in contact with the wagon. This caused the horse to change his position, and there was some evidence to show that the injury to the horse and wagon was increased by the movements of the horse.

*Held*, 1. That, in the absence of proof of a restive character or vicious propensity of the horse, it was not negligence, *per se*, to leave him in the street untied, under the circumstances.

2. That the fact that the damages were increased by the movement of the horse, after the collision, did not relieve the defendant from liability for negligence in causing the collision.

The loss of the profits of a business which is the proximate consequence of the defendant's negligence, is allowable in estimating the damages. Hence, where the plaintiff's business, as an expressman, was wholly suspended by reason of a fatal injury to his horse, caused by the defendant's negligence, he is entitled to a reasonable time in which to select another horse, and the loss of his profits during that time are allowable as damages. And what is a reasonable time in such a case, is a question for the jury.

APPEAL by the defendant from a judgment of the general term of the Marine Court.

The action was brought to recover damages alleged to have been sustained by reason of a collision between one of the de-

fendant's cars and the plaintiff's horse and wagon, on the 22d day of June, 1865.   The evidence upon the trial developed the following facts :

The plaintiff, an expressman, well acquainted with the locality, knew of the existence of the defendant's railroad, and that the same was in regular and continual operation in and through Crosby street.   He had some packages to deliver at Niblo's theatre, and drove close up to the curb-stone in the rear of that building, on the westerly side of Crosby street, and having stopped, he alighted to deliver his packages, leaving his horse untied and unguarded in the street.   During the plaintiff's absence from the wagon, a car of defendants approached in the same direction in which the plaintiff's horse was headed, and on nearing the wagon was brought to a full stop at a point eight or ten feet distant from it.   The driver of the car, thinking there was room enough to pass, started on again.   Coming in contact with the plaintiff's wagon, the horse was hurled upon the curb-stone and against a tree, causing severe injury to the horse and also to the wagon.   There was a conflict of evidence as to whether the injury to the horse was not materially increased by his changing his position after the wagon was struck.   On the trial, the defendant's counsel asked the court to charge, among other things,

I. That if the jury shall find from the evidence that the plaintiff left his horse untied in a public street, with no one to hold him, such act was negligence on the part of the plaintiff, and he cannot recover in this action.

II. That if the jury shall find from the evidence that the plaintiff's horse changed his position, and that if the horse had remained stationary the accident would not have happened, the plaintiff cannot recover.

III. That if the jury shall find for the plaintiff, the measure of damages is the cost of repairing the injury done, and that loss of business, or loss of service, of which the plaintiff complains, is not to be considered.

The judge refused so to charge, and the defendant's counsel excepted.

On the question of damages, the court allowed the plaintiff

to show " how long he was kept out of employment by the accident," and " what his business was worth during that time," to which ruling the defendant's counsel excepted.

The jury rendered a verdict for the plaintiff. The defendant appealed.

*Robinson & Scribner*, for the appellants, on the question of contributory negligence, cited *Button* v. *Hudson River R. R. Co.* (18 N. Y. 248); *Johnson* v. *Hudson River R. R. Co.* (20 Id. 65); *Wilds* v. *Hudson River R. R. Co.* (24 Id. 430, 29 Id. 315); *Mentges* v. *N. Y. & Harlem R. R. Co.* (1 Hilt. 425); *Halloran* v. *N. Y. & Harlem R. R. Co.* (2 E. D. Smith, 257); *Morris* v. *Phelps* (2 Hilt. 38); *Suydam* v. *Grand street R. R. Co.* (41 Barb. 375; 17 Abb. Pr. 304); *Mangam* v. *Brooklyn City R. R. Co.* (36 Barb. 237). It was contended that the proper measure of the plaintiff's damages was only the cost of repairing the injury done to the wagon and the expense of curing the horse, in addition to the difference in the value of the property after the accident; citing *Hughes* v. *Quentin* (8 Carr. & P. 703); *Norman* v. *Wells* (17 Wend. 161).

*E. M. Hussey*, for respondent, claimed that the damages necessarily resulting from the accident constituted a proper element of recovery, and cited *Slack* v. *Brown* (13 Wend. 390); *Strang* v. *Whitehead* (12 Id. 64); *Bennett* v. *Lockwood* (20 Id. 223); *Dewint* v. *Wiltsie* (9 Id. 325).

BY THE COURT.—BRADY, J.—This appeal was argued with great zeal, and it was reserved in consequence of the pertinacity, not censurable, with which defendant's counsel insisted that it was a case of concurring negligence, in the most favorable view for the plaintiff. On the argument, it was considered as presenting a question of fact on the right of the plaintiff to damages, which was fairly submitted to the jury. They were told that if the plaintiff was guilty of any negligence which contributed to the injury complained of, he could not recover. The testimony being conflicting in some respects on that subject, no other instruction could have been given, and the requests of the defendant predicated of a different condition of

the evidence were properly refused. No questions of law, therefore, require consideration except those which relate to the measure of damages. The measurements made by the plaintiff, and corroborated in part by another witness, proved as he stated, that it was impossible for the car to pass his wagon without striking it. The measurements were shown on a rod to the jury, and their accuracy was not assailed or questioned. From them it appeared that the space between the curb and the rail was six feet, and that the axle-box of the defendant's car extended over the rail nine inches, making the distance between the outer surface of the box and the curb, five feet three inches. I have adopted the most favorable measurement for the defendant. The plaintiff's wagon measured five feet seven inches and a-half, which is four inches and a-half more than the distance between the axle-box and the curb. When the driver of the car saw the wagon, he was satisfied there was not room to pass, and stopped his car, and then, being nearer, saw that there was room to do so. The jury thought his first judgment was the correct one, and such must be the conclusion of every man as long as the measurements given remain uncontradicted. The jury no doubt thought, as we think, that the striking of the wagon caused the horse to change his position, and if such an incident increased the damage in any manner, it only added to the defendant's responsibility. Whether the plaintiff was guilty of negligence was a question of fact for the jury, and was determined by them in his favor. The plaintiff left his horse only to deliver his packages, and this he had a right to do. In the absence of any proof of a restive character, or vicious propensity of the animal, it was not negligence, *per se*, to leave him untied during the brief period employed by the plaintiff in delivering his parcels. So far as the evidence contributes any thing relative to the conduct of the horse, it is, that he remained where he was left until the collision caused, perhaps forced him to change his position. The jury must have so found on the proof. It is true that there is a conflict of evidence as to the cause of the collision, but we cannot interfere with the judgment for that reason. It is sufficient that there is in the case enough to sus--

tain the verdict. It is also true that the defendant's witnesses state, that when the wagon was replaced on the street, the car passed it, but there is conflict on that subject also. The plaintiff swears that the wheels were then resting on the curb, and the distances already mentioned, show that the thing was impossible. The plaintiff was entitled to recover on the evidence given on his behalf.

The cross examination of the plaintiff showed that he was competent to give evidence of the damage to the wagon and to the horse. The objection to these inquiries was not to the form of the questions, but to the qualification of the witness to speak on the subject. He had owned between forty-five and fifty horses, and had run a stage line in the West, an experience which certainly qualified him to testify. It was evidence which might receive little or no consideration from the jury, but it could not be rejected. It was not necessary, however, to weigh it against other evidence on the subject furnished by the defendants for they gave none. The same reasons apply to the testimony of Hagar. He had been acquainted with the value of horses for twelve years. He had ridden and taken care of horses.

The evidence of loss of earnings was properly admitted. The defendants destroyed for the time being the plaintiff's means of carrying on his trade. It was his duty to replace them within a reasonable time, but the loss sustained *ad interim* was the natural and proximate consequence of the wrong done him, and as such was recoverable (2 Greenleaf's Ev. § 256; *Bennett* v. *Lockwood*, 20 Wendell, 223; *Shang* v. *Whitehead*, 12 Wend. 64; *Dewint* v. *Wiltse*, 9 Wend. 325; *Walrath* v. *Redfield*, 11 Barb. 368; *Freeman* v. *Clute*, 3 Barb. 424). In *Bennett* v. *Lockwood* (*supra*), it was held that a bailor could recover for time spent and expenses incurred in searching for property wrongfully taken by a bailee and it was declared in *Walrath* v. *Redfield* (*supra*), that the plaintiffs were entitled to recover the value of the use of their mill during the time they were deprived of it by the defendant's act. In *Freeman* v. *Clute* (*supra*), the contract was for the construction of a steam engine to be used in manufacturing oil, and damages

were claimed for delay in furnishing it. It was insisted that the damages were to be estimated by ascertaining the amount of business that could be done by the engine, and the profits resulting therefrom. Justice Harris rejected such evidence on process of calculation, but held, nevertheless, that the plaintiff was to be "allowed for the loss of the use of his mill and machinery." I am aware that the case of *Dewint* v. *Wiltse*, has been criticized in *Blanchard* v. *Ely* (21 Wend. 342), but the Court of Appeals, in *Griffin* v. *Colver* (16 N. Y. 489), have commented upon, and I think questioned, *Blanchard* v. *Ely*, so that it does not stand as an absolute authority upon the subject to which it relates. It was declared in *Griffin* v. *Colver*, that the party injured by a breach of contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. In *Passenger* v. *Thorbun* (34 N. Y. 634), the defendant sold cabbage seed and warranted the same to produce Bristol cabbages, which warranty was untrue, and it was held that the damages would be the value of a crop of Bristol cabbages such as ordinarily would have been produced that year, deducting the expense of raising the crop, and also the value of the crop actually raised therefrom. The decision in that case rests upon the ground of fraud in the warranty, an element which it was admitted, in *Blanchard* v. *Ely*, would have authorized more comprehensive damages, and upon which it was said the decision in the case of *Dewint* v. *Wiltse* must have been based, and upon which it should be sustained. The rule of damages is analogous in cases of fraud and violence. The question which was asked of the plaintiff in this case was, what was your business worth? It involved no computation or calculation, and was answered promptly. If the horse had been injured only, and under treatment, the proper inquiry would have been the expense of a horse to take his place, but he was injured beyond recovery, and the plaintiff was entitled as already suggested to a reasonable time in which to select another. The time devoted to that involved the necessity of his abandoning his business, and is analogous to the pursuit of the property by the bailor in *Bennett* v. *Lockwood* (*supra*). The proceeds or

worth of his business analogous to the use of the mill in *Freeman* v. *Clute*, (*supra*); and also to the rent for the use of the machinery in *Griffin* v. *Colver*. The question of damages is to be determined by the facts and circumstances of each case, and it is difficult to find harmonious decisions upon any of the various and complex theories to be found in the books. The difficulty arises from the multiplicity and variety of losses sustained, and their proximate or remote relation as the natural consequences of the injury done. The right of the plaintiff to recover the six dollars per diem is not entirely free from doubt, but it seems to be within the general rule stated, and to be favored by the particular adjudications cited. Whether the twelve days for which the plaintiff asked compensation was an unreasonable period to enable him to reinstate his business, was a question for the jury. It does not seem to be. On a careful examination of this appeal no reason appears why the judgment rendered should be disturbed. The damages awarded do not appear to be excessive. The plaintiff's horse was ruined, and his wagon was so much injured that it was worth little more than it cost to repair it. The plaintiff lost the earnings of twelve days. No evidence to gainsay his testimony on these subjects was given, and the jury awarded him three hundred dollars.

Judgment affirmed.