RUSSELL v. GIBLIN.

(*Common Pleas of New York City and County, General Term.* June 2, 1890.)

DAMAGES—REMOTE—BREACH OF CONTRACT.

Under a covenant in a lease to furnish the lessee with "steam-power and live steam daily, as required * * * for the general business of book-binding," the lessee cannot recover for injury to his business caused by the insufficient and irregular supply of steam, which he nevertheless continues to use, without attempting to procure an adequate supply from other sources. Such damages are too remote, and not within the contemplation of the parties. Affirming 5 N. Y. Supp. 545.

Appeal from city court, general term.

Action on a covenant in a lease by Thomas Russell against Michael Giblin. Plaintiff appeals from a judgment of the city court, general term, awarding him six cents damages. For former report, see 5 N. Y. Supp. 545.

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*Wilder, Wilder & Lynch,* (*William J. Lynch,* of counsel,) for appellant. *Souther & Steadman,* (*C. E. Souther,* of counsel,) for respondent.

LARREMORE, C. J. Defendant leased certain premises to plaintiff, and covenanted to also furnish him with "six-horse steam-power, and live steam daily, as required, from $7\frac{1}{2}$ o'clock A. M. until 6 o'clock P. M., for the general business of book-binding, to be carried on by the plaintiff in said premises." Plaintiff alleges that, owing to the insufficient steam-power and live steam furnished, he was unable to keep his employes continually at work; and, further, that, by reason of such insufficient service, his stamping-machines were not properly heated, and that much of the book-binding he attempted to do was performed in an inferior manner, and represents a loss. The action is for damages; and a bill of particulars was served, in which, as in the complaint, the two items declared upon recovery are: *First,* the value of the materials destroyed and rendered worthless through the use of the stamping-machines when the steam supply was inadequate; and, *second,* the aggregate amount paid to employes for wages, as estimated, for hours when they were forced to remain idle.

The first of such grounds may be briefly disposed of. Plaintiff himself was the judge of when his stamping-machines were sufficiently supplied with steam to attempt to work with them. Certainly it was not permissible for him to proceed when the proper conditions for operating the apparatus did not exist, and thus spoil good materials, for the sake of creating damages. His own deliberate action was a more influential factor in said damage than defendant's neglect; and no right of action, therefore, could accrue to the plaintiff therefrom. *Stamping Works* v. *Koehler,* 45 Hun, 150. In the case cited, there was also raised the question of the right to recover because employes did not work full time, by reason of insufficient supply of power. It was said in the opinion, (page 152:) "The facts sought to be proved as to the allegation

that the workman did less work are of an equally uncertain character conjective, and must be included in the damages recoverable as laid down in the cases cited." If this means that the wages a man pays his employes are, as far as the outside world is concerned, to be considered as included in, and constituting an increment of, the total cost of the commodity manufactured, I concur in such view. I can find no principle of law which would authorize the charging of the amount of wages directly to defendant as damages. Plaintiff, it seems to me, might with equal show of reason endeavor to recover by way of damages a proportionate share of his other regular business expenses, —rent, for instance. The property was hired only for business purposes. If in any week he is unable to carry on his business for two-tenths of the time he wishes to prosecute it, why should he demand damages for two-tenths of the rent of that week in addition to two-tenths of the hiring price of labor? The general rule as to damages is that they must be such as would "fairly be supposed· to have entered into the contemplation of the parties when they made the contract. They must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature, and in respect to the cause from which they proceed." *Stamping Works* v. *Koehler*, *supra; Griffin* v. *Colver*, 16 N. Y. 489; *Cassidy* v. *Le Fevre*, 45 N. Y. 562.

It is not within the policy of the law to assess damages according to the principle for which plaintiff now contends. The possible total accruing might be far beyond the fair contemplation of the parties. Plaintiff might have supplied the necessary power himself, and have charged defendant with the cost thereof, or he might have recovered the difference in value between the steam contracted for and that actually furnished. It is also quite possible that a third alternative was open to him under some of the later authorities, and particularly under the doctrine advanced in *Wakeman* v. *Manufacturing Co.*, 101 N. Y. 205, 4 N. E. Rep. 264. If it could be shown that plaintiff made a fair effort to supply the steam himself, and was unable to do so, and it were further proved that he was actually prevented from filling, either in whole or in part, certain contracts which he had for the binding of books, an action for damages might have been maintained to recover the profits that he would have realized from such work which he was prevented from performing. The case last cited holds, in effect, that prospective profits may be recovered when they are reasonably certain, and I think the objection of uncertainty as to damages would be obviated by the existence of definite contracts to be filled. The practical difficulty, of course, in a case of this character, would be to ascertain how much of the contract selling price of the manufactured articles stood for profits. Most of the cases in the books involving the question of prospective profits relate to articles not to be manufactured, but to be purchased by the plaintiff; and the prospective profit was easily ascertainable by taking the difference between the agreed purchase price, and the contract selling price. Still, I do not think that this difficulty would be insuperable in a case like this; and such measure of damages, if it could be practically applied, would be the most natural and equitable one, and the one presumably within the fair contemplation of the parties at the time of the making of the lease. It is clear, however, that plaintiff's present theory of action is untenable; and the judgment appealed from should be affirmed, with costs.