(36 Misc. Rep. 190.)

### HOWLEY v. KRAEMER.

(Supreme Court, Appellate Term. October, 1901.)

1. NEGLIGENCE—RUNAWAY HORSE.
    Where a horse attached to a wagon is left unattended in a public street and runs away, the presumption of negligence arises.

2. SAME—EVIDENCE.
    Where a driver testifies that, before leaving his horse unattended in the street, he tied the wheels of the wagon with a rope, and there is also testimony that boys untied the rope and started the horse running, such evidence does not necessarily rebut the presumption of negligence; the driver being an interested witness, as his master would be liable if he tied him insecurely.

3. DAMAGES—PERSONAL INJURIES.
    In an action for personal injuries, the amount of damages is left to the discretion of the jury, and the court will not interfere therewith unless the amount is so unreasonable as to show passion, prejudice, or corruption.

Appeal from municipal court, borough of the Bronx, Second district.

Action by William S. Howley against Albert Kraemer. Judgment for plaintiff. Defendant appeals. Affirmed on conditions.

Argued before FREEDMAN, P. J., and McADAM and GILDERSLEEVE, JJ.

Jones Cochrane, for appellant.
Ferguson & Sinnott, for respondent.

McADAM, J.   On November 24, 1900, the defendant's horse, yoked to a wagon and unattended by any person, ran away in a westerly direction on 139th street, and collided with the plaintiff's wagon at St. Ann's avenue, inflicting the injuries for which he obtained judgment.   The accident, unexplained, raised the presumption of negligence (Norris v. Kohler, 41 N. Y. 42, 46; Unger v. Railroad Co., 51 N. Y. 497; McCahill v. Kipp, 2 E. D. Smith, 413; Doherty v. Sweetser, 82 Hun, 556, 31 N. Y. Supp. 649; Wasmuth v. Butler, 86 Hun, 1, 33 N. Y. Supp. 108; Pearl v. Macaulay, 6 App. Div. 70, 39 N. Y. Supp. 472); and the facts disclosed do not show that, as matter of law, the plaintiff was guilty of contributory negligence.

To rebut the presumption of negligence the defendant's son, Frank Kraemer, driver of the defendant's wagon, testified that he drove the horse and wagon on the day in question to a house on 139th street, 150 feet east of St. Ann's avenue, so as to take away lumber from the cellar of the house; that he backed the wagon to the sidewalk, and turned the horse's head to the west, so that the axle of the front wheels was at right angles to the axle of the rear wheels; that with two "half hitches" he tied the right front wheel to the left rear wheel by means of a rope 1 inch thick and 5 to 6 feet long, which rope he produced in court; that he had always so tied his wagon, and that that was the method used by most drivers who drive vans and express wagons; and that when so tied the more a wagon is moved, the tighter the rope gets.   As to whether, when the wheels are so tied, it is easy to untie them, the witness' testimony is contradictory.   At one time he said it was a very hard thing to untie the rope, and at another time he said the rope was easily untied.   While the driver was down in the cellar the horse ran away.   Defendant's witness Neuendorff testified that shortly before the accident he saw the defendant's horse and wagon on 139th street; that he saw a boy about 12 years old pull the rope out of the wheels of the wagon; that another boy took the reins, pulled the horse, and threw the reins on the horse's back, whereupon the horse ran away to St. Ann's avenue, where the collision took place. This witness after the accident had business dealings with the defendant.   The witness Neuendorff did not see the rope tied, nor did he see it being untied.   He merely saw it pulled out of the wheels.   And, as before stated, the evidence of the defendant's driver, the one who testified that he tied the rope, and the only witness who saw the rope tied, was contradictory.   The driver was an interested witness, and the justice was not bound to believe his testimony that the wheels of the defendant's wagon were properly tied.   If the wagon was insecurely or carelessly tied, the defendant would be liable.   Thompson v. Plath, 44 App. Div. 291, 60 N. Y. Supp. 621; Pearl v. Macaulay, 6 App. Div. 70, 39 N. Y. Supp. 472. The questions were presented to the justice as questions of fact; for, although the defendant made the usual motions for dismissal

at the end of the plaintiff's case, he made no motion after both sides rested. See Hopkins v. Clark, 158 N. Y. 299, 53 N. E. 27; Kafka v. Levensohn, 18 Misc. Rep. 202, 41 N. Y. Supp. 368; Sullivan v. Brooks, 10 Misc. Rep. 368, 31 N. Y. Supp. 36. And we see no reason to disturb the justice's finding that the defendant failed to rebut the presumption of negligence.

As to the amount of damages: The plaintiff was awarded the full amount demanded in his complaint. This sum, as appears by his bill of particulars, was made up of $78.60 for repairs to his wagon, $26.25 for carriage hire while the wagon was undergoing repairs, $30 damages to coat and trousers, $5.15 for medical treatment, and $360 for personal injuries. The estimated damage to the wagon and the value of the repairs, as testified to by Mr. Klein, the witness who did the repairing, coupled with the payment to him of the amount of the estimate, $78.60, fully prove the item in question, which was therefore properly allowed. Volkmar v. Railroad Co., 28 Misc. Rep. 141, 58 N. Y. Supp. 1021. The item for carriage hire, $26.25, was also properly allowed, for it was proved that there was no unreasonable delay in repairing the wagon. Albert v. Railroad Co., 2 Daly, 394. There was no evidence showing the payment of $5.15 for medical expenses. Neither was it proved that the damage to the plaintiff's clothing was $30. As to the injuries to the plaintiff's person, he himself testified: "I was bruised about the back, the hip, and the leg, and the back of me, from the back of my head rather,—the small of my back, my hip, my thigh, and my leg." And his physician testified that plaintiff "had a contusion of the left thigh just above the knee, a contusion and abrasion of the left arm just above the elbow, a contusion of the left hip, a contusion and abrasion of the scalp just back of the left ear, a contusion of the left buttock,—the fleshy part of the thigh. That is all." There was no other evidence as to the extent of personal injuries, and none as to pain, suffering, confinement, or loss of business. Although the award of $360 was ample, it cannot be said to be excessive. In tort actions for personal injuries the amount of damages is left to the discretion of the jury, and the court will not ordinarily interfere unless the amount is so unreasonable and excessive as to be indicative of passion, prejudice, partiality, or corruption. 14 Enc. Pl. & Prac. 756; Walsh v. Railroad Co., 78 Hun, 1, 28 N. Y. Supp. 1097; Minick v. City of Troy, 19 Hun, 253. We are therefore not disposed to reduce the sum allowed for the personal injuries.

Judgment reversed, and new trial ordered, with costs to the appellant to abide event, unless the respondent stipulates to reduce the recovery to $464.85, with the costs awarded below, in the event of which stipulation the judgment will be affirmed, without costs.

Judgment reversed, and new trial ordered, with costs to appellant to abide event, unless respondent stipulates to reduce recovery to $464.85, with costs awarded below, in event of which stipulation judgment affirmed, without costs. All concur.