## Case No. 11,740a.

### The RHODE ISLAND.

[1 Abb. Adm. 100;[1] 6 N. Y. Leg. Obs. 103.]

District Court, S. D. New York. Jan. 10, 1848.[2]

PRACTICE IN ADMIRALTY — ORDER OF REFERENCE —COLLISION—RULE OF DAMAGES—LOSS OF USE—INTEREST AS COMPENSATION.

1. The legality or propriety of an order of reference cannot be impeached upon exception to the report.

2. The general rule of damages applicable to collisions which are not wilful is, that the owner of the injured vessel is to receive a remuneration which will place him in the situation in which he would have been but for the collision.

3. The owner of a vessel, showing himself entitled to damages for collision, is entitled to compensation for the loss of the use of his vessel during the time consumed in making repairs.

4. In the absence of direct evidence of the amount of this item of loss, interest upon the value of the vessel for the time occupied in making repairs may be awarded as a fair compensation in this respect.

1 [Reported by Abbott Brothers.]
2 [Affirmed in Case No. 11,744.]

This was a libel in rem by the Naugatuck Transportation Company, a corporation created under the laws of Connecticut, and owners of the steam propeller Naugatuck, against the steamboat Rhode Island, to recover damages for a collision between the Naugatuck and the Rhode Island. The cause was before the court on the merits of the action in July, 1847, and the proceedings then had are reported [Case No. 11,745],[3] where the facts of the case are fully stated. The court then adjudged in favor of the libellants upon their claim, and ordered it to be referred to a commissioner to ascertain and report the damages sustained by them, including the loss of the time of their propeller while necessarily delayed in receiving repairs. The cause again came before the court upon exceptions to the commissioner's report. The nature of the objections urged appear in the opinion.

Francis B. Cutting and E. H. Owen, for libellants.

A. Hamilton and W. Q. Morton, for claimants.

BETTS, District Judge. This case comes before the court on exceptions taken by both parties to the report of the commissioner.

Many of the objections relate to particular items of allowance or disallowance, which I do not propose to discuss minutely. I shall limit myself to adverting to the general principle to be applied on these points.

The main subject of controversy relates to the estimate of the sum chargeable for the loss of the time of the injured vessel while necessarily delayed in receiving repairs.

The order of reference embraced a direction to ascertain and report that item of injury, and no application was made on the part of the claimants to rescind or modify the order in that respect; it therefore went before the commissioner as a rule obligatory upon him, and now so far concludes the claimants that they cannot, on exception to the report, impeach the legality or propriety of the order. The subject was not debated on the original hearing; and whether this direction was inserted unadvisedly or deliberately by the court, cannot now be ascertained, nor is it properly open for inquiry. Compare The Columbus [Case No. 3,-041].

Had the point been raised, the court would have been called upon to declare definitely whether it sanctioned an allowance to the owners of a vessel injured by collision, for the loss of her services during the period she is necessarily detained to receive repairs, and to fix the rule by which that loss was to be valued.

The general principle applicable where the collision is not wilful is, that the owner of the injured vessel is to be recompensed to the amount of his actual loss; that is, he

[3] [Affirmed in Case No. 11,743.]

shall receive a remuneration which places him in the situation he would have been but for the collision. Abb. Shipp. 307; 2 Wkly. Rep. 279; Story, Bailm. § 608. Although there may be difficulty in defining precisely the particulars composing such actual loss, it clearly includes more than the mere damage to the vessel herself. Every necessary incident directly connected with such damage, becomes also part of the actual loss. The reimbursement of the owner's charges for removing passengers or cargo from the vessel injured, and transporting them to the place of their destination; for salvage services generally, or for any destruction or deterioration of cargo chargeable upon the carrier; and for reloading the cargo for the purpose of being saved or forwarded, would all come within the rule of indemnity and compensation to the injured vessel. The Narragansett [Case No. 10,020]. Then, again, as to the measure of the direct injury, the party demanding damages may ascertain them by the judgment and valuation of witnesses, and recover on such valuation without waiting to repair, or attempting to repair his vessel; or he may await the completion of proper repairs, and then claim the expenditures reasonably laid out in her reparation. The latter is the course taken in this case.

To these rules neither party raises any specific objection. The point of controversy is, whether the owner is also entitled to a recompense for being deprived of the use of his vessel for the time she is necessarily detained in receiving repairs. The commissioner reports an allowance on this head of $20 per day, for a period of forty-two days, that is, $840. The libellants insist that they are entitled to $30 per day for sixty days, amounting to $1,800; and the claimants contend that the allowance should not exceed the wages of the officers and crew for the time, actually paid. According to the evidence this would amount to $8 per day for thirty days, or $240 in the aggregate, independent of the claim of compensation to the master for his employment, continued after the discharge of the crew, and until the repairs of the boat were completed.

The commissioner was bound, under the order, to inquire into the amount of the loss from demurrage of the vessel whilst undergoing repairs. As already intimated, the claimants cannot, by exception to his report, attack the justness or propriety of the order of reference itself.

The question, what is the rule of damages in such case, and whether an estimate of probable profits lost, is a rightful method of determining the amount of such demurrage, is, however, still open, so far as the former adjudication of the court in the cause is concerned.

The case of Sidney v. Condry, 1 How. [42 U. S.] 28, gives the law to this court on that subject. The U. S. supreme court there say that the rule of demurrage in collision cases

is the same as in cases of insurance, and that a party cannot recover for the loss of probable profits. The rule was discussed fully and laid down with clearness in the supreme court of this state, to the same effect. Blanchard v. Ely, 21 Wend. 349. The order in this case conformed to the usage of the English admiralty (The Gazelle, 2 W. Rob. Adm. 279); and under it, according to the doctrine declared by the United States supreme court, the libellants are restricted to demands which would be allowed for demurrage against underwriters. It is true that Dr. Lushington denies that the common-law doctrine in respect to insurance applies to collision cases which are cases of tort. Id. 283. But in an earlier case, the United States supreme court decided that demurrage (that is, the rate of compensation in actions ex contractu) might be adopted as a measure of compensation in cases ex delicto. The Apollo, 9 Wheat. [22 U. S.] 362. It is an allowance or compensation for the detention of the vessel. [The Apollon] 9 Wheat. [22 U. S.] 373. At common law, the allowance is not always governed by the demurrage stipulated by the parties; regard may be had also to the expense and loss incurred by the owner, and the jury must settle the amount. Abb. Shipp. 383; Moorsom v. Bell, 2 Camp. 616.

The supreme court declare, with marked emphasis, that an allowance by way of demurrage is the true measure of damages in all cases of mere detention; for that allowance has relation to the ship's expenses, wear and tear, and common employment. The Apollon, 9 Wheat. [22 U. S.] 378. Forty dollars per day was allowed in that case for the detention of the vessel, on the judgment of witnesses as to what would be a reasonable compensation for being kept out of employment.

Dr. Lushington makes up the compensation for demurrage by deducting from the gross freight so much as would, in ordinary cases, be disbursed in the earning of freight. The Gazelle, 2 W. Rob. Adm. 284.

. There does not appear to be any charge presented in this case for actual loss of freight. The damages are claimed upon the footing of the assumed earnings or profits which the vessel might realize during the period of her detention. This ground is declared inadmissible by both cases in the supreme court. The Apollo, 9 Wheat. [22 U. S.] 378; Smith v. Condry, 1 How. [42 U. S.] 35.

As it is fitting in admiralty courts that some rule of general application should be observed in awarding discretionary damages, I am induced to think, in the absence of direct evidence of loss, that the value of the vessel should be regarded, and that a reasonable percentage upon that value may be properly taken as a fair measure of loss.

The maintenance and wages of the crew being provided for, and no wear or tear that is appreciable being shown, it seems to me that the positive damage sustained by the party consists in being kept out of the use of his capital, the value of the vessel, during her repairs; and a proper percentage on that capital would afford an admissible mode of compensation. In this case I adopt six per cent., the usual rate of interest awarded by this court, and the legal rate in Connecticut, where the vessel is owned, as a reasonable allowance in that respect. On a review of the evidence, I am satisfied with the conclusion adopted by the commissioner, that forty-two days was a reasonable time to allow for making the repairs. The actual time occupied cannot be shown very satisfactorily, as much other work was mixed with them, and the boat was wholly overhauled, and put in a condition for her next season's service, leading to a large amount of outlay of time, labor, and materials not necessary to the reparation of this particular injury. But the exception to the report on this head must prevail, and the report be set aside, because of the measure of damages adopted by the commissioner, the amount of the supposed earnings of the vessel for the period of her detention not being a legal criterion by which to determine the damages occasioned by the detention. The testimony does not enable me to fix the sum, according to the principles now declared, as the expense of the maintenance of the master and crew are not proved, nor the value of the boat.

The case must accordingly go back to the commissioner to ascertain and report those particulars upon the principles indicated.

Injuries from torts must be compensated, in almost all instances, more or less with a view to facts peculiar to each particular case. In adopting, in this instance, interest or a percentage on the value of the boat for the time she was kept out of the libellant's use by means of the collision, I do not assume to lay that down as a particular always to be admitted in determining the damages occasioned by a wrongful collision. I regard it, in the present instance, as a reasonable mode of compensating the party for what is a positive loss to him, and as one which avoids the vague and objectionable valuation of the probable earnings of the boat, had she not been so prevented following her usual employment. [See Case No. 11,744.] Merely to repay the libellants the money expended by them in repairing their vessel, would most palpably fall short of a restitutio in integrum, which is the right of an injured party against a wrong done.

I think, also, the employment of the master as a superintendent of the boat and her repairs, was, under the circumstances, proper, and that the libellants are entitled to reimbursement for the sum paid him per day for forty-two days.

A careful consideration of the testimony

satisfies me that the commissioner, in all other particulars, had arrived at substantially correct conclusions, and I shall not disturb his finding, except as above stated. In many particulars of valuation reported by the commissioner, there is room for diversity of opinion; yet any corrections I might attempt to make upon my appreciation of the evidence set forth on paper, would stand equally liable to be varied in the courts of appeal. The usage in the admiralty courts—and the same principle, in substance, prevails in equity—is to adopt the decision of facts made by the tribunal which had the witnesses and parties on hearing face to face before it, unless some error or mistake is plainly manifest. See, also, Holmes v. Dodge [Case No. 6,637]; The Apollo, 9 Wheat. [22 U. S.] 378. I find none in this case, and on a careful review of the proofs and comparison of them with the report, by aid of the acute and critical argument of the counsel on both sides. I am convinced that the decision of the commissioner is substantially correct on the facts, and ought not to be disturbed.

The exceptions on both sides are accordingly overruled, except as above allowed, and without costs to either party. Order accordingly.

[On appeal to the circuit court the decree of this court was affirmed. Case No. 11,744.]