ROGERS and MARSHALL *vs.* BEARD and others.

Where, in an action upon a bond given for the purpose of procuring the discharge of a vessel attached to enforce a lien for repairs, the defendants seek to recoup the damages sustained by them by reason of the plaintiffs' neglect to perform their contract for repairs within a reasonable time, the true measure of damages is not the probable *profits* of the vessel, but the *rent* or price which would have been paid for the charter, as the vessel was used or chartered at the time.

APPEAL from a judgment entered upon the report of a referee. In the fall of the year 1856 the plaintiffs repaired a schooner belonging to the defendant Beard, and to enforce their lien, seized the vessel under the title of the revised statutes relative to "proceedings for the collection of demands against ships and vessels." (2 *R. S. 3d ed.* 586.) To procure her release, the defendants executed the bond required by the 13th section of that title. This action was brought upon that bond. The cause has been twice tried, before a referee. On the first trial the defendants, under objection, gave evidence of what the vessel would earn each day. The court held the evidence incompetent, and granted a new trial. On the second trial the referee found, as matter of fact, that during the year 1856, Joshua G. Beard, one of the defendants, was the owner of the schooner Isabella; that on the 4th of November, 1856, the said schooner was injured by coming in collision with another vessel in a severe storm off the mouth of the Genesee river, in Lake Ontario, and ran into the port of Genesee for repairs; that at first she was taken charge of by an insurance company by whom she had been insured, but subsequently the owner, for the purpose of controlling the matter of repairs, settled with the insurance company and took the control and charge of the vessel; that immediately thereupon, and on the 15th day of November, 1856, the said owner, and the plaintiffs Rogers and Marshall, who were ship carpenters, residing and doing business at Charlotte, made a special contract or agreement, whereby the plaintiffs undertook and agreed to and with said

Beard to furnish the materials necessary to be used in the repairs of the said vessel, and to do and perform all the work and labor in making such repairs, and finish and complete the same, for the price of three hundred dollars, which Beard in consideration thereof agreed to pay ; that no definite time was fixed by the contract for the completion of the work; that the repairs were completed and the work accepted on the 12th day of December, 1856 ; that with reasonable diligence the work might have been completed by or before the 29th day of November, 1856 ; that all the work done and materials used by the plaintiffs in repairing the vessel were embraced in the contract, except the blacksmith's bill of $32.45; that this vessel in the season of 1856, prior to the collision aforesaid, had been used by the owner, who resided in Toronto, Canada West, in navigating Lake Ontario, in carrying produce from Canadian to American ports, and bringing back return cargoes of coal, wood, oats and potatoes to Toronto ; the said owner being then engaged in such business. On the question of the damages claimed by the defendants for the delay in the completing the repairs, the following facts were proved, viz : It was proved that during the fall of 1856 there was a large quantity of wheat and other grain at the ports on the Canadian side of Lake Ontario, waiting transportation to American ports, and that there was a great demand for vessels with which to transport the same ; that at the close of navigation on the lake, a considerable quantity of wheat and grain remained in store for the want of vessels to transport it as aforesaid ; that navigation on the lakes substantially closed about the 22d day of November, 1856, although some vessels continued to navigate the lake, departing from and returning to the Canadian ports after that date. These were, however, exceptional cases. There was no evidence before the referee that any vessel started on a new voyage from any of the American ports after the said 22d of November, except two, and as to them the voyages were broken up by storm and were not com-

Rogers *v.* Beard.

pleted. That in all cases, insurance of ships navigating the lakes with their cargoes for the season expired on the 30th of November, 1856, and all insurances after that time were at special rates, and for particular voyages, and that the uniform rate of insurance, when any could be effected after that date, was at the rate of one per cent per day. Testimony was given, under objection by the plaintiff, (and the referee's decision with assent of counsel was reserved until the close of the case,) tending to prove that the use of the vessel would have been worth to the defendants $40 per day after the 29th of November to the time the repairs were completed. But this testimony was, according to the referee's view of it, wholly based upon the probable earnings and profits to be derived from navigating Lake Ontario during that period, and without regard to the risks of navigation or the expense of insurance. The same testimony tended to prove that if the property was insured and the expense of insurance deducted from the earnings, no profits would arise to the owners. This testimony the referee disregarded and rejected from consideration in his final decision of the case. It was further proved that the defendants discharged the crew of the vessel, except the captain, before the repairs were commenced, but that the defendants afterwards sent from Toronto to Charlotte another crew of six men to man the vessel, who arrived at Charlotte on the 29th of November, and that this crew remained at Charlotte until the 17th of December, 1856, and then returned to Toronto. The expense incurred was shown in the case. There was evidence tending to prove that the crew were employed during their stay at Charlotte in putting new sails and rigging in the vessel, and that this work was not completed until about the time the repairs were finished. The referee found, however, as a conclusion of law, that the expenses incurred in sending the crew to Charlotte and in maintaining them there, did not constitute any legal claim for damages arising from the said delay. The captain of the vessel remained at Charlotte during the time the repairs to

the vessel were being made, and superintended the repairs on behalf of the defendants. He was paid by the defendants his wages at $50 per month during that time, and the defendants also paid $3 per week for his board while he remained at Charlotte. The referee further found, as a conclusion of law, that this expense constituted no legal claim for damages arising out of the delay aforesaid. That on the 15th of December, 1856, the plaintiffs took proceedings under the provisions of part 3, chapter 8, title 8, of the revised statutes, to enforce their lien for repairs, and a warrant of attachment was issued by Hon. T. R. Strong, a justice of the supreme court, for the seizure of said vessel, as alleged in the complaint; and said vessel was so seized by the sheriff of Monroe county, December 15, 1856, and the same was kept by him until January 28, 1857, when the bond described in the complaint was executed by the defendants, to procure her release, and she was thereupon released and the bond delivered to the plaintiffs. That the plaintiffs paid, at the request of the defendant Beard, the blacksmith bill of $32.45. The referee further found, that the defendants sustained no damage for the delay of the plaintiffs in completing the repairs pursuant to the contract. The referee further found, as conclusions of law, from the foregoing facts, that at the time of the commencement of said proceedings and the issuing of the warrant of attachment aforesaid, the plaintiffs had a valid lien upon the vessel for the said two sums of $300, and $32.45, with interest thereon; and that the plaintiffs were entitled to recover against the defendants, the contract price aforesaid, of $300, and the sum of $32.45, paid by the plaintiffs at the request of the defendants, with interest on those two sums from the 14th day of December, 1856.

And the defendants duly filed and served the following exceptions: 1. Wherein the referee finds that the completion of the repairs, 12th December, 1856, was in compliance with the agreement made between Rogers and Beard.

2. Wherein he finds that at the time of the commence-

ment of the proceedings and the execution of the bond, the plaintiffs had a subsisting lien on said vessel for the sum of $332.45, and interest on the same from December 12, 1856, and that the plaintiffs are entitled to judgment against the defendants for the penalty of said bond, with execution, for the sum of $405.45, besides costs.

3. Wherein he finds that no definite time was fixed for completing the repairs and work on the vessel.

4. And wherein he finds that the owner of the vessel was not entitled to any compensation or damage for the detention of said vessel, or for the failure on the part of the plaintiffs to complete such repairs within the time specified, and that no damages were recoverable or allowable.

*J. C. Cochrane,* for the plaintiffs.

*O. H. Palmer,* for the defendants.

*By the Court,* E. DARWIN SMITH, J.  The first objection of the defendants' counsel to the plaintiffs' right of recovery in this action, that they had no valid or subsisting lien upon the vessel at the time of its seizure, I think is not well taken. The plaintiffs' claim was for work done and materials furnished for or towards the building, repairing, fitting, furnishing or equipping such ship or vessel.  If the plaintiffs establish such debt, it is expressly made, by the statute, a lien upon such ship or vessel, her tackle, apparel and furniture.  (2 *R. S.* 3*d ed.* 587, § 1.)  If the judgment in favor of the plaintiffs is right upon the merits, it necessarily includes and sustains the lien claimed upon the vessel.  The work was confessedly done, as the referee finds, upon a special contract for the price of $300, and the repairs were complete and the work accepted on the 12th December, 1856. The questions in dispute relate chiefly to the time of performance and the counter-claim of the defendants.  The referee finds that no definite time was fixed by the contract for the

completion of the work; but he also finds that with reasonable diligence the work might have been completed by or before the 29th of November, 1856. The acceptance of the work without objection, after the expiration of the time within which it might have been completed with reasonable diligence, bound the plaintiffs to pay for the same, subject to the right of recoupment or counter-claim for any damages sustained by the non-completion of the work within proper or reasonable time. This finding renders it immaterial whether the referee was right in his finding, upon the facts, that no specific time was fixed by the contract for its completion. If the defendant acquiesced in the delay in completing the work, and accepted the vessel after the time, without objection, he could not afterwards insist that it was not performed in time, as a condition precedent, and refuse payment on that ground; but he was not cut off from any defense arising from the neglect of the plaintiff to fulfill the contract in time.

The chief question in dispute relates to the defendants' recoupment, or claim for damages, by reason of the plaintiffs' neglect to perform the task within a reasonable time. On this question the referee finds, as matter of *fact*, that the defendant sustained no damages by the delay of the plaintiffs in completing the repairs pursuant to the contract. This finding is necessarily conclusive, and disposes of the whole defense, unless it is so clearly erroneous that we should feel bound to set it aside as against the weight of the evidence. There is a good deal of evidence on this question, and it is quite conflicting, and we clearly, I think, would not be warranted in overruling this finding of the referee, if no error was committed in receiving or rejecting evidence, or in the rule of law applicable to the question of damages in such cases. The whole controversy in the case, and the only real difficulty at the trial, relates to the rule of damages, upon the assumption that the defendants are entitled to recoup. When the case was before us on a former occasion, it appeared that

the referee had allowed proof showing what the vessel would earn per day. This we held to be error, (see 20 *How. Pr. Rep.* 102,) and that the question was what the use of the vessel was worth at that particular season of the year; referring to the case of *Griffin* v. *Colver*, (16 *N. Y. Rep.* 495,) for the true rule. On the re-trial the defendants' counsel claimed the right, and offered evidence to show what the use of the vessel would have been worth from the 29th November to the close of navigation. This inquiry presented the true question of damages if it sought the value of the charter or rent of such a vessel as such vessel was used or chartered at the time. But the referee regarded the question as presenting simply a speculative opinion, or an inquiry as to probable *profits* of the vessel, depending upon contingencies too uncertain to form a rule of damages. The language employed in the opinion on the former occasion, in respect to the *use* of the vessel, was the same language used in *Freeman* v. *Clute*, (3 *Barb.* 424,) without particularly considering how such use was to be estimated ; but it was intended to assert and follow the rule laid down in *Griffin* v. *Colver*, (*supra*,) to which reference was had. In this opinion it is held that the *rent* of the property, or the price which would be paid for the charter of a steamboat, referring to the case of *Blanchard* v. *Ely*, (21 *Wend.* 342,) afforded the true measure of damages in such cases. No wrong was done to the defendants, therefore, by the referee. He received the evidence in the first instance conditionally, and in effect passed upon it as insufficient and not affording the true rule or measure of damages in such cases. The referee, in effect, applied the true rule as laid down in *Griffin* v. *Colver*, to the evidence offered, and in the light of that case and of the rule there asserted, held that the defendants' evidence was inadmissible, or rather that the defendants, upon such evidence, had not sustained any damages. The referee, we think, applied the right rule in estimating the defendants' damages, and did not err in the

conclusions of fact in the application of such rule to the defendants' evidence.

No error in substance injurious to the defendants having been committed, the judgment should be affirmed.

[MONROE GENERAL TERM, September 2, 1861. *Smith, Johnson* and *Knox,* Justices.]

<hr />