### GAAR, SCOOT & CO. v. SNOOK.

ACTION FOR DAMAGES IN THE NATURE OF FUTURE PROFITS, NOT MAINTAINABLE.

S. purchased a steam saw mill and attachments of G. S. & Co., who warranted that "the saws were free from seams and flaws and as true as saws can be made ;" said mill and saws to be delivered at a certain time. In an action to recover the purchase price, S. claimed damages resulting from a loss occasioned by the failure of G. S. & Co. to furnish suitable saws according to the terms of said warranty, whereby S. was prevented from fulfilling a contract, made after the delivery of said mill, for the sawing of a lot of logs, and was deprived of the profits thereof.

On demurrer to this defense by G. S. & Co., *Held*, that the claim for damages was in its nature for the loss of future profits, and of such remote and uncertain character as would not authorize a recovery.

ERROR to the Court of Common Pleas of Ashland county.

The plaintiffs brought suit upon four promissory notes, each calling for the sum of $108.00 executed by the defendant, dated January 20, 1881, and payable in three, six, nine, and twelve months respectively, with interest, and to foreclose a chattel mortgage given to secure the payment of said notes upon a steam saw mill and attachments.

The defendant filed his answer, and in the first defense admitted the execution of the notes and chattel mortgage, and avers that said notes were given as a part consideration for a steam saw mill, including saws, purchased of the plaintiffs about the 20th of January, 1881; that at the time of said purchase the plaintiffs warranted in writing "all saws free from seams and flaws and true as saws can be made." That the plaintiffs agreed to deliver said mill at the railroad depot at Ashland, O., January 20, 1881, fully equipped with saws ready for use. That the plaintiffs failed to deliver said mill until the 19th day of February, 1881, during all of which time the defendant was unemployed and at the expense of paying hands engaged by him to operate said mill.

That after said mill was received, the defendant could not operate the same because of the defective manner in which said saws were made, by reason of which loss of time and expense the defendant claimed damages.

As the second defense the defendant avers, that between the 20th day of January, and the 1st day of April, 1881, he had contracted with sundry parties in Ashland county to saw for said parties 350 logs, depending and relying on the contract with the plaintiffs, by the terms of which they were to furnish him with said saw mill fully equipped with saws and attachments to do said work. That said parties depended and relied upon him to do said work, said logs

having been drawn together ready for that purpose; but in consequence of said plaintiffs not furnishing said defendant with a mill and saws as they had agreed to do, and in consequence of their failure to make good their said contract with the defendant, he lost the sawing of said logs, wherefore he claims damage in the sum of $250.

To the second defense in the answer the plaintiffs demurred. The court overruled the demurrer, and plaintiffs excepted and filed their reply thereto. The case was tried to a jury and a verdict rendered for the defendant upon his claim for damages.

A motion was made for a new trial and overruled, and a bill of exceptions taken; a petition in error is now filed in this court to reverse the judgment of the court of common pleas.

It is assigned as error that the court erred in overruling the demurrer to the second defense of the defendant's answer.

2. In admitting certain evidence offered by defendant against the plaintiff's objection, and excluding evidence offered by the plaintiffs. And also in the charge to the jury.

ALBAUGH, J.

The decision of the question raised by the demurrer to the second defense in the answer of the defendant, disposes of the other assignments of error in this case, for the reason that they all relate to that defense.

The claim here made for damages is based upon the failure of the plaintiffs to furnish a saw for said mill that corresponded with the terms of the warranty given at the time of the purchase, and that by the breach of the contract of warranty, the defendant was deprived of the profits he would have realized in sawing the lot of logs which he says he had contracted with certain parties to do.

It is claimed on behalf of the plaintiffs that the claim is in the nature of special or consequential damages, of such remote and uncertain character that no rule could be established with certainty to authorize a recovery; that if there was a breach of contract in this respect, that it was not the *proximate* cause of the damages claimed.

The question presented is: Can the defendant recover more than the damages arising directly from such breach, such as would make him whole, and give him as good machinery as he contracted for, or is equivalent, or has he a right to go further and recover for such damages as he claims to have sustained by reason of contracts made with other parties, for whom he agreed to do sawing and which he was prevented from doing by reason of the breach of contract on the part of the plaintiffs?

There is no claim that the sale of this mill was made with reference to any particular contract which the defendant had made with others for sawing, or that the plaintiffs knew that any such contract had been made or would be made, or that the mill was sold to do any particular job of work. It was a general sale for specific price, with warranty that the saws should be of a certain kind and quality.

The injury complained of is the loss of profits which the defendant expected to realize from his contract to saw this lot of logs. "It is not a primary rule, but is a mere deduction from that more general and fundamental rule, which requires that the damages claimed should in all cases be shown by satisfactory evidence to have been actually sustained; and it is a well established rule that the damages to be recovered from a breach of contract must be shown with certainty, and not left to mere speculation or conjecture. And it is under this rule that profits are excluded from the estimate of damages in such cases. An allowance of damages upon the basis of the calculation of profits would be in the highest degree unfavorable to the interests of the community. The calculation would proceed upon contingencies and conjectures, and not upon facts." *Ex parte* Schooner Lively, 11 Gall., 315.

In Blanchard v. Ely, 21 Wend., 342, the court say: "In general the parties are deemed to have contemplated only the damages and injury which result from the nonperformance of the obligation in respect to the *particular thing* which is the object of it, and not such as may have been accidentally occasioned thereby in respect to his own other affairs. This rule applies to cases when by reason or special circumstances, having no necessary connection with the contract broken, damages are sustained which would not ordinarily or naturally flow from such breach; as where a party is prevented by the breach of one contract from availing himself of some other collateral and independent contract entered into with other parties, or from performing some act in relation to his own business not necessarily connected with the agreement; in such cases the damages sustained are disallowed, not alone because they are uncertain, nor because they are merely consequential or remote, but because they cannot be fairly considered as having been within the contemplation of the parties at the time of entering into contract."

Also in the case of Griffin v. Colan, 16 N. Y., it was held that the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature in respect to the cause from which they proceed, and they must be not the remote, but the proximate consequence of such breach, and must not be speculative or contingent.

In Rhodes v. Baird, 16 O. S., 573, an action was brought on a contract by which the defendant agreed to make a lease for a term of years to the plaintiff of certain lands, on which to plant and cultivate a peach orchard. The breach consisted in the failure of defendant to make the lease, and in his causing the plaintiff within two years from his taking possession to be evicted from the premises;—but after the peach trees were planted. On the trial, the plaintiff was permitted to give evidence of the probable profits that might in the future be realized from the orchard. It was held that the evidence as to probable future profits was incompetent as furnishing a basis for the assessment of damages, such evidence being uncertain and speculative in its nature, and in a great degree conjectural.

In Masterton v. Mayor of Brooklyn, 7 Hill, 61, it is said: "When the books and cases speak of the profits anticipated from a good bargain as matters too remote and uncertain to be taken into the account in ascertaining the measure of damages, they usually have relation to dependent and collateral engagements entered into on the faith and in expectation of the performance of the principal contract. The performance or nonperformance of the latter may, and often doubtless does exert a material influence upon the collateral enterprises of the party, and the same may be said as to his general affairs and business transactions; but this influence is altogether too remote and subtle to be reached by legal proof or judicial investigation. But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties, stand upon different footing. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for, the right to the enjoyment of which is just as clear and plain as the fulfilment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon at the time the contract was made, and formed perhaps the only inducement to the arrangement."

In Fleming v. Beck, 48 Penn. St., 309, it was also said that "a very small part of the machinery of a mill or factory may be so essential to its running, that the want of it will stop operating until this part be amended or replaced, causing a large loss by suspension; but who has ever supposed that the mill-wright or mechanic, who undertakes to repair or replace it and whose compensation may be only a few dollars, by his implied contract to do his work in a workmanlike manner to be held liable for the losses of the mill being idle? But

few men could be found to do work at a risk so great for a compensation so inadequate; but when by the terms of a special contract, or the facts brought in view at the time, the attention of the party is called to the fact that the risk is to be his, and he enters into the contract with this consequence in his mind, he may be held to another measure of compensation.''

By the terms of this contract the plaintiffs were bound to furnish the saw mill in complete running order with saws, corresponding to the terms contained in the warranty, and in case they failed in this, they would be liable only for the direct consequences of their omission to do so, and not for damages arising from the collateral engagements of the defendant with other parties, in which the plaintiffs could in no way participate. The contract cannot be interpreted so that it may be inferred that the damages of this kind were within the contemplation of the parties when it was executed. The law does not hold one liable for all the consequences that may follow the breach of his contract; if it were so, his liability would be without limit, for it would continue as far as the consequences of his act could be traced. But the law wisely limits liabilty to the direct and immediate effects of the breach of a contract. The damages claimed in this defense are not of that character. They resulted remotely from the fact that the plaintiffs failed to furnish the mill according to the contract, and are not the natural and proximate consequence of the breach of the contract.

We are of the opinion that the demurrer should have been sustained. The judgment is, therefore, reversed.

J. W. and George B. Smith, for plaintiffs.

Campbell and Grosscup for defendant.